**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANTRAUN HOLLEY
c/o Latham & Watkins
555 11th St NW,
Washington, D.C. 20004

*Plaintiff*,

v.

UNITED STATES OF AMERICA

Serve:

Todd Blanche
Attorney General of the United States
Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530

Jeanine Ferris Pirro
U.S. Attorney for the District of Columbia
601 D Street NW
Washington, D.C. 20579

*Defendant*.

**Case No.** 1:26-cv-3753

## COMPLAINT FOR DAMAGES

**(Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401, 2671–80)**

1. Plaintiff Antraun Holley complied with the stringent conditions of supervised release for nearly a year beyond the time required of him by the United States Parole Commission ("the Commission"), solely because employees of the Court Services and Offender Supervision Agency for the District of Columbia ("CSOSA"), a federal agency, negligently failed to carry out a directive of the Commission terminating Mr. Holley's supervision.

2. On December 3, 2019, Mr. Holley began his supervised release term. On December 21, 2022, the Commission issued a Certificate of Early Termination

(the "Certificate") for Mr. Holley, which ended his term of supervised release early as of that date. Mr. Holley's Community Supervision Officer ("Officer"), a CSOSA employee, did not inform him that the Commission had terminated his supervised release and that he was now a free man. It was not until December 19, 2023, ***a year later***, that a different Officer finally told Mr. Holley that his supervision had been terminated.

3. To add insult to injury, Mr. Holley's Officer hid from Mr. Holley that his supervision had actually terminated a year prior, on December 21, 2022.

4. Upon information and belief, Mr. Holley's Officer was on notice as early as June 6, 2023, that his supervision term may have been terminated, and did not conduct any diligence to confirm whether Mr. Holley was in fact still on supervision.

5. CSOSA employees negligently failed to carry out the services they were required to render to Mr. Holley pursuant to the Commission's directives, including their duties to process the Certificate, inform Mr. Holley that his term of supervised release ended, and maintain accurate case files. As a direct result of this negligence, Mr. Holley was forced to comply with the conditions of supervised release for nearly a year after the Commission terminated his supervision.

6. Mr. Holley's supervision conditions included reporting to CSOSA twice per week for drug testing, submitting to periodic home inspections, and disclosing his supervisory status to potential employers. He continued to satisfy these conditions while under the constant fear that even a minor technical violation, such as arriving late to an appointment or missing a drug test, could result in reincarceration. Mr. Holley endured these burdens for no reason other than CSOSA's failure to carry out the Commission's directive, and as a result suffered economic loss, emotional distress, and reputational harm for which he is entitled to compensation.

7. CSOSA employees' negligent conduct took place while they were acting within the

scope of their office or employment with CSOSA, a federal agency, under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the laws of the District of Columbia. *See* 28 U.S.C. § 2674 *et seq*.

8. Mr. Holley seeks compensation for the economic loss, emotional distress, and reputational harm he suffered as a result of being forced to comply with the burdensome conditions of supervised release for nearly a year after the Commission determined that he deserved early discharge. He respectfully moves for judgment against Defendant United States of America on the grounds and in the amount set forth below.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1346(b)(1) because it presents a federal question under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*., and asserts claims against the United States for money damages.

10. Venue is proper in this District under 28 U.S.C. § 1402(b), because Plaintiff resides in this District and the acts and omissions complained of occurred here, and under 28 U.S.C. § 1391, because the head of CSOSA is located in this judicial district and Plaintiff's claims for relief arose in the District of Columbia.

**PARTIES**

11. Plaintiff Antraun Holley is a 49-year-old resident of the District of Columbia. Mr. Holley was under the supervision of CSOSA in the District of Columbia from December 3, 2019, through December 19, 2023.

12. Defendant United States of America is the governing entity that operates and oversees CSOSA, a federal executive agency, whose responsibilities include managing the implementation of conditions of release that are imposed by the Commission for those on parole and supervised

release in Washington, D.C. In this case, the United States acted through its agents (CSOSA employees), who negligently failed to carry out the Commission's directives, causing Mr. Holley to remain subject to the conditions of supervised release for a year beyond the date the Commission terminated his supervision. Each of the employees acted within the scope of his or her employment and under color of the law of the United States at all times. The United States is sued for Mr. Holley's personal injuries caused by the acts or omissions of CSOSA employees.

## ADMINISTRATIVE EXHAUSTION

13. On December 19, 2023, Mr. Holley first learned that the Commission issued the Certificate, which ended his term of supervised release on December 21, 2022. His claims therefore accrued on December 19, 2023.

14. On December 8, 2025, pursuant to the FTCA, Mr. Holley filed an administrative claim via Standard Form 95 with CSOSA in connection with his unlawfully prolonged supervised release. CSOSA received his administrative claim on December 16, 2025.

15. Mr. Holley's administrative claim documented the injuries that he sustained as a result of CSOSA's negligent undertaking of his supervised release, including its employees' failure to upload the Commission's Certificate, maintain accurate case files, carry out the early termination ordered by the Commission, and inform Plaintiff of his supervised release termination date. These failures caused Mr. Holley to remain subject to—and to comply with—the requirements of his supervised release beyond his termination date.

16. Mr. Holley filed his administrative claim within two years after accrual of his claim.

17. On June 8, 2026, CSOSA denied Mr. Holley's administrative claim.

18. Mr. Holley has therefore exhausted his administrative remedies under the FTCA.

## FACTUAL BACKGROUND

19. This case is about an individual who complied with the stringent conditions of supervised release for a year longer than required solely because CSOSA employees negligently failed to carry out a Commission directive terminating his supervision. CSOSA employees failed to timely process Mr. Holley's early termination Certificate, failed to accurately maintain his case file, failed to inform him that his supervision had ended, failed to actually end the supervision when directed to do so, and failed to investigate the conditions of his supervision upon transfer to a new Officer. As a direct result, Mr. Holley suffered economic loss, emotional distress, and reputational harm.

### A. CSOSA is a Federal Agency Tasked with Implementing the Supervised Release Conditions Set by the Commission

20. The Commission administers parole and supervised release programs and determines the conditions and term length of an individual's supervision.

21. The Commission delegates to CSOSA the firsthand supervision of individuals on parole and supervised release, and tasks CSOSA with implementing the conditions of release established by the Commission. CSOSA's stated mission is to "supervise adults under [its] jurisdiction to enhance public safety, reduce recidivism, support the fair administration of justice, and promote accountability, inclusion and success."[1] "[S]tringent standards of contact and surveillance" are intended to "help[] CSOSA . . . provide the men and women [it] supervise[s] with the services they need to improve their lives."[2]

22. Officers are employees of CSOSA, and they are responsible for carrying out the

---

[1] *Who We Are | Mission, Goals, and Guiding Principles*, CSOSA, https://www.csosa.gov/mission-goals-guiding-principles/ (last visited June 12, 2026).

[2] *What We Do | Community Supervision*, CSOSA, https://www.csosa.gov/community-supervision/ (last visited June 12, 2026).

supervised release program. They conduct the day-to-day supervision of people on parole or supervised release. Supervisory Community Supervision Officers ("Supervisory Officers") manage case assignments and sign off on Officers' reports.

23. CSOSA's supervised release program is oriented toward Mr. Holley's successful reintegration into society. The Officers' responsibilities relate to Mr. Holley's well-being. Officers monitor and report on Mr. Holley's emotional, professional, and social progress, and CSOSA's yearly supervision reports evaluate his well-being in these areas. CSOSA's supervisory relationship with Mr. Holley is not a custodial relationship designed to incapacitate or neutralize a threat to the community. Rather, the purpose of CSOSA's supervised release program is to support a supervisee's successful reintegration into society, and to provide the supervisee with services needed to improve the supervisee's life. As a result, CSOSA's supervisory relationship with Mr. Holley necessarily implicated his emotional well-being, and he relied entirely on CSOSA to administer his release status accurately.

24. When an individual fails to meet the conditions of supervision, CSOSA and the Commission coordinate to determine whether to revoke the individual's release and return them to custody.[3] As opposed to a criminal violation, a technical violation occurs when a supervisee violates the conditions of his or her supervision, for example, when a supervisee is late to an appointment with an Officer or misses a drug test.[4] Even where the underlying conduct involves only technical violations, revocation can result in substantial periods of incarceration.[5]

25. If a supervisee complies with the conditions of supervision and avoids revocation for

---

[3] *See* Cmty. Supervision Servs. Operations Manual, ch. VII, pp. 30–32, https://static.prisonpolicy.org/scans/CSS-Operations-Manual.pdf.

[4] *See* Cmty. Supervision Servs. Operations Manual, ch. VII, pp. 1–11, 16.

[5] *See* Cmty. Supervision Servs. Operations Manual, ch. VII, p. 31.

at least one year, the Commission may, in its discretion, terminate the supervisee's term of supervision early. *See* 28 C.F.R. §§ 2.95, 2.208.[6]

26. When the Commission grants a supervisee early termination, Officers and Supervisory Officers have specific obligations, including "complet[ing] a final report entry in the offender's case file and enter[ing] the case closing data in the SMART database management system."[7]

**B. Officers Are Required to Maintain Accurate Case Files and to Audit Those Files Upon Transfer of a Supervisee**

27. CSOSA's Operations Manual requires Officers to maintain "[a]ccurate and detailed case documentation," including "the case file, . . . correspondence and official documentation."[8] "The case file itself is an official Agency folder maintained on each offender that contains sensitive information and records related to that particular case."[9] The Manual specifies exact requirements for maintaining the physical case folder, including instructing Officers to arrange "[d]ivision investigations and supervision history . . . in date sequence or chronological order" and ensuring that the folder "contain[s] a complete history of the offender from intake to discharge."[10]

28. CSOSA's policy explicitly states that "[a]ll correspondence received by a[n Officer] pertaining to an offender under supervision is to be placed in that offender's case file."[11]

---

[6] *See* Cmty. Supervision Servs. Operations Manual, ch. VIII, p. 17 (citing U.S. Parole Commission, Rules and Procedures Manual, part D).

[7] *See id*. at p. 18.

[8] Cmty. Supervision Servs. Operations Manual, ch. VI, p. 31.

[9] *Id*. at pp. 30–31.

[10] *Id*.

[11] *Id*.

29. When a supervisee is transferred from one Officer to another Officer, there are certain procedures the former Officer, the new Officer, and their respective Supervisory Officers must follow, including that the Supervisory Officers must "audit the case for compliance."[12] The Supervisory Officers are "to provide specific instruction to the [newly] assigned [Officer] regarding the [] case" and "to establish a specific period in the future to ensure that the specific [] instructions are followed."[13] The Supervisory Officers "must review the Judgment and Commitment Order and all other relevant case documents . . . assigned to his/her respective team to ensure accuracy and awareness."[14]

### C. Plaintiff Holley's Supervised Release Term Was Unlawfully Prolonged for an Extra Year Due to the Admitted Negligent Conduct of CSOSA Employees

30. Mr. Holley began his supervised release term on December 3, 2019, under the supervision of CSOSA employees in the District of Columbia.

31. During his term of supervised release, his conditions of release included the following: (1) participate in an approved inpatient or outpatient program for treatment of narcotic addiction or drug and alcohol dependency as instructed by his Officer, including testing and examination to determine if he had reverted to the use of drugs; (2) abstain from use of alcohol and all other intoxicants; (3) if instructed by a Bureau of Prisons institutional employee or his Officer, reside in and participate in the Re-Entry and Sanctions Center program until discharged by the Center Director; (4) participate in and complete anger management counseling as directed by his Officer; (5) make four contacts per month with his Officer; (6) maintain a residence in the District of Columbia and undergo periodic home inspection; and (7) maintain gainful employment.

---

[12] Cmty. Supervision Servs. Operations Manual, ch. VIII, pp. 10–11.

[13] *Id.*

[14] *Id.* at p. 12.

32. Mr. Holley was originally sentenced to a supervised release term of 26 years, from December 3, 2019, through December 3, 2045.

33. The Commission issued the Certificate on December 21, 2022, concluding "[a]fter a careful review" that Plaintiff "deserve[d] an early discharge." The Commission's transmittal letter enclosing the Certificate was addressed to Officer Bernard Riddle Jr. ("Officer Riddle"), who was the Officer responsible for supervising Mr. Holley in December 2022. Upon information and belief, Supervisory Officer Denise Garris ("Supervisory Officer Garris") was Officer Riddle's supervisor in December 2022.

34. Officer Riddle never informed Mr. Holley that he had received an early discharge. Officer Riddle failed to carry out the Commission's directive when he failed to include the Certificate in Mr. Holley's case file, as required by CSOSA's Operations Manual.

35. Officer Riddle negligently failed to upload the Certificate, accurately maintain the case file, inform Mr. Holley of his early termination, and actually end Mr. Holley's supervision when the Commission ordered that it end. Supervisory Officer Garris negligently failed to supervise Officer Riddle. As a direct result of these failures, Mr. Holley remained subject to the conditions of supervised release until December 19, 2023—**nearly a full year beyond the Commission's early termination date.**

36. Starting around May 23, 2023, Mr. Holley's file was transferred to Officer Raven Green ("Officer Green"), and he was then subject to Officer Green's supervision. During this time, Supervisory Officer George Eatmon ("Supervisory Officer Eatmon") was supervising Officer Green.

37. CSOSA's Operations Manual requires a Supervisory Officer to "audit [a

supervisee's] case for compliance" upon transfer from one Officer to another.[15] Upon information and belief, Supervisory Officers Garris and Eatmon either (i) negligently failed to audit Mr. Holley's case file upon transfer to a new Officer (Officer Green), or (ii) did audit Mr. Holley's case file upon transfer, but negligently failed to uncover that he was no longer under supervision per the Commission's Certificate terminating his supervision on December 21, 2022.

38. On December 18, 2023, Officer Green submitted an Annual Progress Report to the Commission.

39. On December 19, 2023, the Commission sent Officer Green the same Certificate it sent to Officer Riddle a year earlier, dated December 21, 2022, which had terminated Mr. Holley's supervised release term. Later that day, Officer Green called Mr. Holley and informed him that he had been granted early termination of his supervised release, but did not tell him that the termination actually occurred a year earlier and that Officer Riddle had failed to tell him.

40. That same day, Officer Green reported in Mr. Holley's SMART running record (an official CSOSA internal document) that Mr. Holley was informed of the end of his supervised release a year late because "the certificate was sent to [Mr. Holley's] previous [Officer] but was not uploaded to the document library."

41. That same day, Mr. Holley immediately called his attorney, Micaela Gelman (Staff Attorney at the Public Defender Service for the District of Columbia), to inform her that he had just learned of the termination of his supervised release term. During that call, Ms. Gelman informed Mr. Holley that his supervision had actually terminated one year prior, on December 21, 2022.

42. Although Officer Green learned that the Commission had terminated Mr. Holley's

---

[15] Cmty. Supervision Servs. Operations Manual, ch. VIII, p. 11.

supervision in December 2022, Officer Green **never** informed Mr. Holley that he had been subject to the conditions of supervised release for an entire year beyond his lawful termination date.

43. **No CSOSA employee ever** informed Mr. Holley that he had been unlawfully supervised for a year after the Commission ended his supervision term.

44. CSOSA's records further show that CSOSA was on notice that Mr. Holley may have received early termination months earlier. On June 6, 2023, shortly after Mr. Holley's case was transferred to her, Officer Green recorded in Mr. Holley's SMART running record that Mr. Holley "advised that his previous CSO mentioned ET in October," and that "CSO will follow up." Upon information and belief, ET is short for "early termination," and no CSOSA employee followed up to confirm whether Mr. Holley had received early termination.

### D. During the Course of Their Negligent Conduct, CSOSA Employees Were Acting Within the Scope of Their Employment

45. Each year during Mr. Holley's supervision, Officers and Supervisory Officers submitted reports to the Commission regarding his compliance with his supervised release conditions.

46. In December 2022, Officer Riddle and his supervisor, Supervisory Officer Garris, signed and submitted a report reflecting their supervision of Mr. Holley.

47. In December 2023, Officer Green and her supervisor, Supervisory Officer Eatmon, signed and submitted a report reflecting their supervision of Mr. Holley.

48. Officer Riddle, Officer Green, Supervisory Officer Garris, and Supervisory Officer Eatmon at all times were acting within the scope of their employment. CSOSA's mission is to supervise adults on supervised release, and part of their duties includes maintaining a supervisee's case file. Processing release documentation is the kind of work they are employed to perform to carry out the Commission's directives. The conduct at issue occurred during authorized work

hours. At all times that they were supervising Mr. Holley, Officer Riddle, Officer Green, Supervisory Officer Garris, and Supervisory Officer Eatmon were motivated by the purpose of serving their employer, CSOSA, and implementing the conditions of supervision set forth by the Commission.

### E. During the Course of Their Negligent Conduct, CSOSA Employees Unambiguously Violated CSOSA's Own Policies

49. All CSOSA employees involved, particularly Officer Riddle and Officer Green, failed to maintain "[a]ccurate and detailed case documentation," including "the case file, . . . correspondence and official documentation."[16] They failed to verify that Mr. Holley's physical case file "contain[ed] a complete history of the offender from intake to discharge," and failed to ensure that "[a]ll correspondence received . . . pertaining to [Mr. Holley]" was "placed in that offender's case file."[17]

50. All CSOSA employees involved, particularly Supervisory Officer Garris and Supervisory Officer Eatmon, failed to comply with CSOSA's procedures for proper transfer of a supervisee from one Officer to another. They failed to adequately "audit the case for compliance" and to "review the Judgment and Commitment Order and all other relevant case documents . . . assigned to his/her respective team to ensure accuracy and awareness."[18]

### F. Mr. Holley Suffered Serious Harm as a Result of CSOSA's Negligence

51. Due to the negligence of Officer Riddle, Officer Green, Supervisory Officer Garris, and Supervisory Officer Eatmon, Mr. Holley remained subject to the conditions of supervised

---

[16] Cmty. Supervision Servs. Operations Manual, ch. VI, p. 31.

[17] *Id.* at pp. 31–32.

[18] Cmty. Supervision Servs. Operations Manual, ch. VIII, pp. 11–12.

release for nearly an entire year after the Commission determined that he deserved early discharge.

52. Mr. Holley complied with the conditions of supervised release for an additional year because noncompliance carries severe consequences. Noncompliance for technical violations of supervised release conditions can result in incarceration, even without violating criminal laws.

53. For an additional year, Mr. Holley was forced to comply with the burdensome conditions of his release. For example, he was required to report to CSOSA twice per week to submit to drug testing, which is an invasion of privacy and a deprivation of basic freedoms. These appointments forced him to spend time and resources traveling to the CSOSA office, often during work hours. Moreover, when CSOSA Officers were late to their appointments with Mr. Holley, whether at the CSOSA office or at home visits, their lateness caused Mr. Holley to arrive late to his job, putting him at risk of losing it. Losing his job would constitute a technical violation of his supervised release conditions and could result in reincarceration.

54. For an additional year, Mr. Holley experienced emotional distress directly caused by his continued supervision. Mr. Holley feared that any misstep, however minor, could result in reincarceration. This fear was reasonable: even minor technical violations of supervised release conditions can result in substantial periods of incarceration.

55. For an additional year, Mr. Holley suffered reputational harm associated with his status as a supervised releasee. Mr. Holley was required to disclose his supervisory status to potential employers, which restricted his employment opportunities. Members of Mr. Holley's community continued to perceive him as a person under criminal supervision rather than a free individual.

56. Mr. Holley's emotional distress was acute and enduring. During the additional year of supervision, he lived with the constant fear that even a minor infraction (such as arriving late to

an appointment or missing a drug test) could result in incarceration. Mr. Holley was required to report to CSOSA twice each week for drug testing and to submit to periodic home inspections. These requirements created recurring opportunities for technical violations. Mr. Holley relied on CSOSA to administer his release status accurately and had no independent means of determining whether he remained legally obligated to comply with the conditions of his supervision.

57. After learning in December 2023 that the Commission had terminated his supervised release a full year earlier, Mr. Holley experienced acute distress upon realizing that his compliance with the conditions of supervision during that year—including twice-weekly drug testing, periodic home inspections, employment restrictions, and residential restrictions—had been entirely unnecessary. Mr. Holley endured these burdens and the attendant fear of reincarceration for noncompliance for a full year, solely because CSOSA employees failed to carry out the Commission's directive. The distress Mr. Holley experienced was a direct and foreseeable consequence of CSOSA's negligence.

## CAUSE OF ACTION

## FEDERAL TORT CLAIMS ACT, 28 U.S.C. §§ 1346(b), 1402(b), 2401, 2671–80

## (Against Defendant United States of America)

58. As described in paragraphs 13–18, Plaintiff has administratively exhausted his claims.

59. Under D.C. law, negligence requires "the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Hansen v. Lappin*, 800 F. Supp. 2d 76, 82 (D.D.C. 2011) (quoting *Toy v. Dist. of Columbia*, 549 A.2d 1, 6 (D.C. 1988)).

60. If the United States were a private person, it would be liable to Mr. Holley under the

law of the District of Columbia for negligent undertaking. *See* Restatement (Second) of Torts §§ 323, 324A (A.L.I. 1965).

61. Pursuant to its own policies and its stated institutional mission, CSOSA undertook the responsibility of rendering supervision services to Mr. Holley that CSOSA employees have recognized as necessary for the protection of his person. *See* Restatement (Second) of Torts § 323 (A.L.I. 1965). CSOSA also undertook to perform duties that the Commission owed to Mr. Holley, including the duty to process the Certificate, maintain accurate case files, and implement the Commission's directives. *See* Restatement (Second) of Torts § 324A (A.L.I. 1965).

62. CSOSA employees failed to exercise reasonable care in performing these duties. This failure increased the risk of harm to Mr. Holley by exposing him to potential arrest and reincarceration for violating supervised release conditions that the Commission had already terminated. It caused harm to Mr. Holley that resulted directly from his reliance on CSOSA to carry out the Commission's directives accurately. And it constituted a negligent failure to perform duties that the Commission owed to Mr. Holley and that CSOSA undertook to discharge on the Commission's behalf. *See* Restatement (Second) of Torts §§ 323, 324A (A.L.I. 1965).

63. In addition and in the alternative, if the United States were a private person, it would be liable to Mr. Holley under the law of the District of Columbia for negligent infliction of emotional distress. *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 802 (D.C. 2011).

64. CSOSA's supervisory relationship with Mr. Holley necessarily implicated Plaintiff's emotional well-being. The purpose of CSOSA's supervised release program is to support the supervisee's reintegration into society, not to neutralize a threat posed by the supervisee for the benefit of the community. Officers monitored Mr. Holley's emotional, professional, and social progress as part of CSOSA's program, and Mr. Holley relied entirely on CSOSA to administer his

release status accurately. *See supra* ¶¶ 23, 56.

65. CSOSA's failure to process the Certificate and end Mr. Holley's supervision presented an especially likely risk of serious emotional distress. Mr. Holley remained subject to the conditions and potential consequences of supervised release—including the risk of reincarceration for technical violations, the obligation to disclose his supervisory status to employers, and the reputational effects associated with continued government supervision—for an entire year after the Commission terminated his supervision. *See supra* ¶¶ 52–57.

66. CSOSA employees' negligent failure to carry out the Commission's directive in fact caused Mr. Holley acute and enduring emotional distress. During the additional year of supervision, Mr. Holley experienced constant anxiety associated with the risk of reincarceration and distress associated with continued government supervision. Upon learning in December 2023 that his supervised release had ended a year earlier, Mr. Holley experienced additional distress from the realization that his compliance throughout that year had been entirely unnecessary, and occurred solely as a result of CSOSA's negligent failure to implement the Commission's directive. *See supra* ¶¶ 54–57.

67. Pursuant to CSOSA's case-file maintenance policies, *see supra* ¶¶ 27–29, Officer Riddle owed Mr. Holley a duty to maintain an accurate case file and to carry out the Commission's directives regarding his supervision. This duty required Officer Riddle to promptly process the Certificate by uploading it to the CSOSA document library, provide notice to Mr. Holley of his early discharge, and actually discharge Mr. Holley from supervision as the Commission directed.

68. Officer Riddle's failure to take these actions constituted a breach of his duty to Mr. Holley.

69. Officer Riddle's failure to upload the Certificate, maintain an accurate case file, notify

Mr. Holley of his early termination, and timely end supervision directly and proximately caused Mr. Holley to remain on supervised release from December 21, 2022, through at least May 2023 (when supervision was transferred to Officer Green), and contributed to his continued supervision through December 19, 2023.

70. Pursuant to CSOSA's transfer and case-review procedures, *see supra* ¶¶ 29, 37, Supervisory Officer Garris owed Mr. Holley a duty to ensure the accuracy of his case file and to oversee Officer Riddle's supervision of him.[19]

71. Supervisory Officer Garris breached this duty by failing to adequately investigate Mr. Holley's case file and by transferring the case to Supervisory Officer Eatmon and Officer Green without conducting the required audit.

72. Supervisory Officer Garris failed to identify the error for five months after her direct report, Officer Riddle, received the Certificate, and failed to identify the error during the file transfer to Officer Green in May 2023. These failures directly and proximately contributed to Mr. Holley's continued supervision beyond his lawful termination date.

73. Pursuant to CSOSA's transfer and case-review procedures, *see supra* ¶¶ 27–29, 37, Officer Green owed Mr. Holley a duty upon assuming supervision to investigate the compliance of his case file, including the accuracy and inclusion of any communications from the Commission, and to confirm his release status and termination date.[20]

74. Officer Green's failure to investigate Mr. Holley's case file, discover the already-issued Certificate, and confirm his termination date constituted a breach of this duty.

75. Officer Green's failure to review Mr. Holley's file upon assuming supervision

---

[19] *See* Cmty. Supervision Servs. Operations Manual, ch. VIII, pp. 11–12.
[20] Cmty. Supervision Servs. Operations Manual, ch. VI, pp. 31–32, ch. VIII, p. 11.

directly and proximately caused him to remain on supervised release from approximately May 2023 through December 19, 2023—an additional seven months beyond the period attributable to Officer Riddle's and Supervisory Officer Garris's negligence.

76. Pursuant to CSOSA's transfer and case-review procedures, *see supra* ¶¶ 27–29, 37, Supervisory Officer Eatmon owed Mr. Holley a duty to ensure the compliance of his case file upon its transfer to Officer Green.[21]

77. Supervisory Officer Eatmon breached this duty by failing to adequately investigate Mr. Holley's case file upon transfer and by signing off on the Commission Annual Progress Report for Mr. Holley without investigating or confirming his release date.

78. Supervisory Officer Eatmon's failure to identify the error during the file transfer process, and his failure to verify Mr. Holley's release status before signing the Annual Progress Report, directly and proximately contributed to Mr. Holley's continued supervision beyond his lawful termination date.

79. The actions of Officer Riddle, Officer Green, Supervisory Officer Garris, and Supervisory Officer Eatmon directly and proximately caused Mr. Holley the injuries described in paragraphs 51–57.

80. At all times, Officer Riddle, Officer Green, Supervisory Officer Garris, and Supervisory Officer Eatmon were performing the supervision duties for which they were hired, within the time and space of their employment, and for the purpose of serving CSOSA's mission (and therefore the United States Government's mission) of supervising Mr. Holley pursuant to the Commission's directives.

81. No law or policy affords CSOSA employees any discretion to ***not*** comply with the

[21] Cmty. Supervision Servs. Operations Manual, ch. VIII, pp. 11–12.

Commission's directive terminating a supervisee's supervised release term.

82. CSOSA policies ***require*** Officers to maintain accurate and detailed case files, including ensuring that "[a]ll correspondence received by a[n Officer] pertaining to an offender under supervision is to be placed in that offender's case file."[22] Officer Riddle and Supervisory Officer Garris failed to timely process the Certificate and adequately update Mr. Holley's case file in accordance with CSOSA policies.

83. Further in contravention of CSOSA policies,[23] Supervisory Officer Eatmon and Officer Green then failed to investigate the compliance of Mr. Holley's case file and the conditions of his supervision upon transfer from Officer Riddle and Supervisory Officer Garris.

84. These acts were not discretionary, judicial, or quasi-judicial in nature. Accordingly, neither the discretionary function exception to the FTCA nor judicial immunity shields the United States from liability.

85. Mr. Holley does not challenge the validity of the National Capital Revitalization and Self-Government Improvement Act of 1997; he challenges CSOSA employees' failure to comply with their responsibilities under the Act and its regulations. Accordingly, the due care exception to the FTCA does not apply.

86. Because Officer Riddle, Officer Green, Supervisory Officer Garris, and Supervisory Officer Eatmon were acting within the scope of their employment with a federal agency (CSOSA) when they unlawfully prolonged Mr. Holley's supervised release beyond the date set by the Commission, Defendant United States is liable for the injuries Mr. Holley sustained as a direct and

---

[22] Cmty. Supervision Servs. Operations Manual, ch. VI, p. 31.

[23] *See* Cmty. Supervision Servs. Operations Manual, ch. VIII, p. 11.

proximate result of their negligent conduct.

## PRAYER FOR RELIEF

WHEREFORE, Antraun Holley respectfully requests that this Court enter judgment in his favor and grant the following relief:

a. RULE that Defendant United States of America is liable to Plaintiff under the Federal Tort Claims Act for negligence as defined by D.C. law;

b. ENTER JUDGMENT awarding Plaintiff damages, as a result of the emotional distress, financial harm, and reputational harm he endured due to the negligence of CSOSA employees, and in an amount commensurate with his injuries;

c. ENTER JUDGMENT awarding Plaintiff his costs and reasonable attorneys' fees in this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A); and

d. GRANT Plaintiff such other and further relief as this Court may deem just and proper.

Dated: October 26, 2026

Respectfully submitted,

By *<u>/s/ J. Christian Word</u>*

J. Christian Word (D.C. Bar No. 461346)
Matthew Peters (D.C. Bar No. 1015700)
Danayit Musse (D.C. Bar No. 1735499)
**LATHAM & WATKINS LLP**
555 11th Street NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201

Email: Christian.word@lw.com
Matthew.peters@lw.com
Danayit.musse@lw.com

*Counsel for Plaintiff Antraun Holley*